## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | | |
|---|---|---|
| OCEAN SKY INTERNATIONAL, L.L.C., ET AL. | * | CIVIL ACTION NO.  18-0528 |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| THE LIMU COMPANY, L.L.C., ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a compound motion to dismiss for lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), and for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), filed by defendants, The Limu Company, L.L.C. ("LIMU") and Gary Raser.  [doc. # 25].  For reasons that follow, it is recommended that the motion to dismiss be denied, in its entirety.

## Background

On April 19, 2018, Ocean Sky International, Inc. and Suni Enterprises, Inc.[1] filed the instant diversity suit, 28 U.S.C. § 1332, against the Limu Company, L.L.C. ("LIMU"), Gary Raser (LIMU's CEO and founder), plus other unknown individuals and entities fictitiously named as, "Does 1-25."  Plaintiffs alleged in their complaint that,

> LIMU is a multi-level marketing company – otherwise known as an "MLM" company – that manufactures and distributes dietary supplements worldwide.

---

[1] In response to defendants' motion and a court order, plaintiffs amended their complaint on September 12, 2018, to correctly identify their corporate names and to properly allege citizenship of the parties for purposes of diversity.  *See* doc. #s 35 & 37.  Upon review of the amended pleading, the court finds that plaintiffs have properly established subject matter jurisdiction, via diversity.

As with other MLM companies, LIMU markets and sells products through a network of independent distributors (also referred to as "Promoters") who are remunerated pursuant to a "Compensation Plan," which provides for a structured series of rankings, commissions, and bonuses based upon their sales volumes and the sales of distributors placed beneath them.

The individuals that are aligned below a particular distributor are known as that distributor's "downline" or "downline organization." The downline may also be referred to as a "genealogy."

To become a distributor for LIMU, an individual must submit a "Distributor Application." By submitting the Distributor Application, distributors are required to purchase products in order to earn any commissions and are strongly encouraged to purchase a $499.00 or $999.00 fast track pack ("Packs") to earn in all areas of compensation. Once purchasing a Pack, the distributor may either resell the products to his or her customer base, or, in the alternative, may consume the products for their own benefit.

                    *                    *                    *

Once the distributor receives his or her identification number, a contract is formed between LIMU and the distributor. The Distributor Application, Compensation Plan, and Policies & Procedures collectively comprise LIMU's "Distributor Agreement."

According to the terms of the Distributor Agreement, specifically Section 8(c)(ii) of LIMU's Policies & Procedures, a distributor may only be terminated for cause.

LIMU entices distributors to join its sales force through the offer of the "MLM Promise." The MLM Promise is a representation that if a distributor works hard and builds his or her downline, then after a few years, the distributor can sit back and enjoy a care-free lifestyle by living off the distributor's residual commissions generated by his or her downline organization.  In some instances, LIMU represents the MLM Promise by indicating to its distributors that they "can build generational wealth."

The promise of a lifestyle change is what entices many distributors to join LIMU. However, in reality, once a distributor works hard to achieve a high rank with the corresponding income level, LIMU uses pre-textual reasons to terminate the distributor and summarily confiscates his or her downline and residual income for LIMU's own benefit. Since LIMU cuts off the distributor's income, the distributor is left without any funds to assert his or her rights, and this is what LIMU counts on.

(Amend. Compl., ¶¶ 10-13, 16-19).

Plaintiffs' predecessors-in-interest joined LIMU in 2004. (Amend. Compl., ¶ 25). Plaintiffs, in turn, joined LIMU based upon the MLM Promise made by Raser and other LIMU corporate representatives. *Id.* "Plaintiffs believed that after they built their downline organization to a certain level of success they would be able to possess sufficient residual income from their downline to allow them to enjoy a more leisurely lifestyle." *Id.*, ¶ 26. By some unspecified date, plaintiffs achieved LIMU's top rank, and were earning approximately $75,000 per month, collectively. *Id.*, ¶ 27.

On, or around November 1, 2017, Raser told the owner of Ocean Sky and another LIMU distributor that they needed to start enrolling more distributors quickly, or it was over. *Id.*, ¶¶ 32-33. Thereafter, the relationship between LIMU and plaintiffs quickly deteriorated, and on December 11, 2017, LIMU suspended Ocean Sky and Suni's distributorships because of multiple alleged violations of LIMU's Policies and Procedures. *Id.*, ¶¶ 41-42. On March 12, 2018, LIMU formally terminated Ocean Sky and Suni's distributorships. *Id.*, ¶ 43.

Plaintiffs contend that LIMU's actions were fraudulent, made in bad faith, and constitute a breach of the Distributor Agreement. *Id.*, ¶ 44. Accordingly, they seek damages for breach of written and oral contracts (against LIMU and DOES 1-25); for fraud and negligent misrepresentation (against all defendants); and for detrimental reliance (against LIMU).

On June 6, 2018, LIMU and Raser filed the instant motion to dismiss. Defendants contend that the court lacks personal jurisdiction to entertain the suit against Raser. In addition, defendants seek dismissal of plaintiffs' claims on the merits for failure to state a claim upon which relief can be granted. Plaintiffs filed their opposition to the motion to dismiss on June 27,

3

2018.  [doc. # 27].  Defendants filed a reply brief on July 9, 2018.  [doc. # 30].  Plaintiffs filed a

sur-reply on September 10, 2018, and an amended complaint on September 12, 2018.  [doc. #s

36 & 37].[2]  Thus, the matter is ripe.

## Analysis

### I.    Personal Jurisdiction

a)    Law

A federal district court sitting in diversity may exercise personal jurisdiction over a

nonresident defendant as long as, (1) the long-arm statute of the forum state confers personal

jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state does not

transgress due process protections under the United States Constitution.  *Latshaw v. Johnston*,

167 F.3d 208, 211 (5th Cir. 1999).  Louisiana's long-arm statute extends jurisdiction to the full

limits of the United States Constitution.  *See* La. R.S. § 13:3201(B).  Accordingly, the sole issue

here is whether exercising *in personam* jurisdiction over the non-resident defendant comports

with federal due process.  *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th

Cir.2010) (citation omitted).

For personal jurisdiction to satisfy due process requirements, the plaintiff must establish

---

[2] When, as here, plaintiffs amend their complaint while a motion to dismiss is pending, and defendants maintain that the defects raised in the original motion are not cured by the new pleading, then the court may consider the motion to dismiss as being addressed to the amended pleading.  Indeed,

> defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.  Rather, [i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.

*Rountree v. Dyson*, 892 F.3d 681 (5th Cir. 2018) (citations omitted). The court will consider the motion to dismiss as encompassing the amended complaint.

that "(1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citations omitted).

Though minimum contacts may give rise to either "general" or "specific" jurisdiction,[3] plaintiffs argue only the latter, which exists when the "plaintiff's cause of action . . . arises out of or results from the defendant's forum-related contacts." *Willow Bend, L.L.C. v. Downtown ABQ Partners, L.L.C.*, 612 F.3d 390, 392 (5th Cir.2010). Stated differently, "[s]pecific or case-linked jurisdiction depends on an affiliatio[n] between the forum and the underlying controversy (i.e., an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 1125, n.6 (2014) (citations and internal quotation marks omitted).

The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir.2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir.2006)).

If plaintiff can successfully establish the first two prongs, then the burden shifts to defendant to show that exercising jurisdiction would prove unfair or unreasonable. *Id*.

---

[3] *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, ___ U.S. ___, 137 S.Ct. 1773, 1780 (2017).

"For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden, supra*. The court must look to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there. *Id*. (citation omitted). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden, supra* (citation omitted).

When, as here, "a nonresident defendant timely questions a federal district court's *in personam* jurisdiction over [him], the plaintiff asserting jurisdiction has the burden of proving that the court has jurisdiction over the defendant." *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831–32 (5th Cir.1986), on reh'g in part, 836 F.2d 850 (5th Cir.1988) (citations omitted). If the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, then plaintiff need make only a prima facie showing of the jurisdictional facts. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). In assessing whether plaintiff has made a prima facie showing, the court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *Id*. (citation and internal quotation marks omitted).[4] However, the court need not credit plaintiff's conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001) (citations omitted).

---

[4] Of course, even if plaintiffs were to avoid a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, they still would be required to prove the jurisdictional facts at trial by a preponderance of the evidence. *Travelers Indem. Co., supra*.

b)    Facts

1)    *Raser's Initial Declaration*

In support of the motion to dismiss, defendants submitted the declaration of Gary Raser in which he averred that he resided in Florida; he did not own or lease real property in Louisiana; he is not registered to conduct business in Louisiana, nor does he own any businesses registered in Louisiana; he does not have a bank account in Louisiana; and he has never paid taxes in this state.  (Gary Raser Decl.; M/Dismiss, Exh.).  Raser did not travel to Louisiana to recruit plaintiffs to become promoters for LIMU; rather, he recruited plaintiffs' predecessors-in-interest to become promoters from Florida.  *Id*.

When Raser traveled to Louisiana, he did so as chief executive officer for LIMU.  *Id*.  He did not travel to Louisiana to meet with plaintiffs in their role as promoters.  *Id*.  In his capacity as chief executive officer, Raser communicated with LIMU's promoters from LIMU's Florida headquarters.  *Id*.  Ocean Sky and Suni became promoters for LIMU in 2003.  *Id*.  In November and December 2017, Raser sent text messages from Florida to an Ocean Sky executive regarding his actions that violated LIMU's Policies and Procedures.  *Id*.

LIMU makes certain training and marketing videos available to its promoters, via its website, which is hosted by LIMU.  *Id*.  None of LIMU's servers are located in Louisiana.  *Id*.  Raser adduced a copy of LIMU's 2017 Policies & Procedures, which is one of the documents that governs the conduct at issue in this suit.  *Id*.

2)    *Pardue and Liles Declarations*

In response to defendants' motion to dismiss, plaintiffs submitted the declarations of Shannon Pardue and Thomas Liles – the owners and operators of Ocean Sky and Suni,

respectively.  (Pardue and Liles Decls.; Pl. Opp. Memo., Exhs.).  Pardue stated that he had been a LIMU distributor employing the Ocean Sky corporate name since 2003.  *Id*.  Likewise, Liles stated that he had been a LIMU distributer under the Suni corporate name since his 2003 enrollment.  *Id*.  During their tenure at LIMU, Raser continuously represented that Pardue and Liles's downline organization constituted "[their] business," owned by each distributor.  *Id*.  For instance, in LIMU's Policies & Procedures attached to its motion, it states that a "Promoter ***may own and operate his or her business*** as a sole proprietorship, or may operate through a business entity such as a partnership, limited liability company, or corporation."  (Pardue Decl.).

Pardue visited the LIMU website and listened to several President's calls, whereby Raser continuously referred to Pardue's organization as "[his] business."  *Id*.  The website addresses for the calls included nomenclature suggesting that they occurred in 2017 and 2018.  *Id*.

Raser represented to Pardue that if he worked hard to build a successful downline organization, then he eventually could step aside and continue earning residual income via the efforts of the distributors in his downline organization.  *Id*.  Raser made these representations on conference calls, internet posts, and, most importantly, at corporate events.  *Id*.  This continuing representation by Raser motivated Pardue to continue with LIMU and to build his downline organization.  *Id*.

During Pardue and Liles's tenure, LIMU held corporate events in Louisiana in each of the following series of years:  2004-2006, 2008, 2012-2014, 2016-2018.  *See* Pardue and Liles Decls. Raser was a keynote speaker at each of these events.  *Id*.  On these occasions, Raser represented that a distributor's downline organization was his or her own business.  *Id*.  He also represented that with hard work and a successful downline came the chance for a care-free lifestyle, via

8

residual income from the distributor's downline organization.  *Id*.

Because of Raser's representations at these corporate events, Pardue and Liles stayed with LIMU and continued to build their downline organizations.  *Id*.  Had they known that Raser's representations were false, then Pardue and Liles never would have stayed with LIMU.  *Id*.

   3) *Raser's Reply Declaration*

Raser submitted a declaration in support of defendants' reply brief.  (Raser Decl.; Defs. Reply Brief, Exh.).  Raser explained that, as LIMU's chief executive officer, he hosted certain President's Calls from Florida.  *Id*.  In these calls, LIMU would open up a conference line so its distributors from around the world could call in to receive updates on LIMU products and training tips.  *Id*.  Raser initiated the two Presidents' Calls referenced by Pardue from Lake Mary, Florida.  *Id*.

Raser stated that he "would never tell any of LIMU's distributors that a time will come when they can step aside and continue to earn residual income."  *Id*.  He identified several instances where he told distributors that they needed to keep working to grow their downline business.  *Id*.

Between 2004 and June 2018, LIMU held a total of 361 events to build its brand.  *Id*. Only 44 events, or 12 percent of the total, were held in Louisiana.  *Id*.  Raser attended only 13 events in Louisiana, which represented but four percent of the overall total.  *Id*.

c) <u>Discussion</u>

Defendants maintain that Raser's limited contacts with the forum state were in his official capacity on behalf of LIMU, and therefore, the "fiduciary shield doctrine" precludes the exercise of jurisdiction over Raser stemming from those corporate activities.  Under both Louisiana and

federal law, the "fiduciary shield doctrine" provides that "the acts of a corporate officer in his corporate capacity cannot form the basis for jurisdiction over him in an individual capacity." *Southeast Wireless Network, Inc., v. U.S. Telemetry Corp.*, 954 So.2d 120, 128 (La. 2007) (citations omitted); *see also General Retail Services, Inc. v. Wireless Toyz Franchise, L.L.C.*, 255 Fed. Appx. 775, 795 (5th Cir. 2007). The doctrine requires a court to examine the personal and individual contacts between the officer and the forum state. *Southeast Wireless Network, Inc., supra*.

Louisiana and federal courts have recognized exceptions to the doctrine, one of which applies when the individual is the alter ego of the corporation. *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985). A second exception allows the court to exercise jurisdiction over a non-resident defendant whose tortious or fraudulent conduct would subject him to personal liability in the forum state. *See Southeast Wireless Network, Inc., supra*; *General Retail Services, Inc., supra*; *Endotech USA v. Biocompatibles Intern. PLC*, No. 00-0957, 2000 WL 1594086, at *11-12 (E.D. La. 2000). The Fifth Circuit has repeatedly recognized that an officer may not use the corporate shield when he commits fraud or intentional torts. *J&J Sports Prods., Inc. v. Mallet Enterprises, Inc.*, No. 17-4303, 2017 WL 6559887, at *2 (E.D. La. Dec. 21, 2017) (citations omitted). Thus, when a plaintiff alleges that an officer of a corporation commits a fraudulent act or intentional tort, then it is unnecessary to pierce the corporate veil. *Id*.

Here, plaintiffs asserted claims for delictual fraud/intentional misrepresentation and negligent misrepresentation against Raser. Plaintiffs alleged that Raser falsely represented to them that their downline organizations belonged to them, and that if they built up a strong downline organization, then they could sit back and enjoy the residual income for the rest of their

10

lives.  (Amend. Compl., ¶ 62).

 According to Pardue and Liles, Raser made these representations on President's calls, LIMU's website, and at corporate events held in Louisiana.  The court is not persuaded that the President's calls and website suffice to establish that Raser purposefully directed his activities towards Louisiana.  The conference calls were opened up for distributors to call in from around the world.  There is no indication that defendant singled Louisiana out.  It was mere fortuity that a distributor(s) from Louisiana happened to call in and listen to the conference call.  If this activity sufficed to confer personal jurisdiction, then the same rationale would support the exercise of personal jurisdiction over Raser anywhere in the world that someone happened to initiate a call or download the recording.  Such a result is not reconcilable with the due process clause's purposeful direction or availment requirement.  Likewise, by all accounts LIMU's website was passive, and therefore may be likened to advertising via the internet.  Of course, passive websites do not support personal jurisdiction.  *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir.1999).

However, Raser's statements that he purportedly made at corporate events in Louisiana are materially distinct.  On an almost annual basis, Raser traveled to one of several different cities in Louisiana and spoke to hundreds of people, many of whom were Louisiana residents.  At each of these events, Raser was the keynote speaker, where he would allegedly represent that a distributor's downline organization was the distributor's own business, and that with hard work and a successful downline came the *chance* of a carefree lifestyle, sustained by the residual

11

income from the distributor's downline income.[5]  In short, Raser uttered the alleged tortious statements that form the basis for plaintiffs' delictual fraud/intentional misrepresentation and negligent misrepresentation claims during his virtually regular visits to Louisiana, before an audience comprised of many Louisiana residents, including Pardue and Liles – the owners of Ocean Sky and Suni.[6]  Moreover, Raser knew well that Pardue was present at these corporate events in Louisiana because Raser went so far as to have Pardue appear on stage to promote LIMU.

Accordingly, the court finds that Raser purposefully directed his activities toward Louisiana sufficient to show purposeful availment of the benefits and protections of this state. Consequently, he reasonably should have anticipated being haled into court here to defend a cause of action arising out of the same forum-based activities.  *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. Appx. 775, 794 (5th Cir.2007) (citations omitted); *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir.2001); *Sudden Valley Supply LLC v. Ziegmann*, No.

_____

[5]  Defendants argue that because, per Pardue and Liles, Raser only said that with hard work and a successful downline came the *chance* of a carefree lifestyle, he never actually represented that a distributor necessarily *would* have a carefree lifestyle, as plaintiffs contend in their claims for misrepresentation.  In other words, plaintiffs' cause of action does not arise out of defendant's forum-related contacts, as required to support personal jurisdiction. However, "chance of a carefree lifestyle," in that context, reasonably means that it was possible or that the distributor enjoyed an opportunity to achieve that goal.  Plaintiffs maintain, however, that, in practice, there was *no* chance or opportunity to achieve a "carefree lifestyle" at all:  "no matter how hard a distributor works or how large his or her downline organization may be, LIMU will take away the distributor's compensation, preventing him or her from enjoying lifetime residual income." (Amend. Compl.).  Therefore, Raser's alleged statements uttered at corporate events in Louisiana may support the exercise of personal jurisdiction.

[6]  Defendants contend that Raser never made the purported misrepresentations that form the basis for plaintiffs' claims and the exercise of personal jurisdiction over him.  However, plaintiffs supported their allegations with declarations.  At this stage of the proceedings, the court must resolve conflicts in the evidence in favor of plaintiffs.  *See Freudensprung, supra*.

13-0053, 2013 WL 2099440, at *4 (E.D. Mo. May 14, 2013).

When, as here, the plaintiff has made its prima facie case that the non-resident defendant has "minimum contacts" with the forum state, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir.2006) (citation omitted). In conducting the fairness inquiry, the court considers, "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies." *Id*. (citation omitted). The "primary concern," however, is the burden on the defendant. *Bristol-Myers Squibb Co., supra*.

Here, Raser did not seriously argue that the exercise of jurisdiction would be unfair and unreasonable. Therefore, the court necessarily finds that Raser failed to establish that the exercise of jurisdiction would offend "traditional notions of fair play and substantial justice." *See Lewis, supra* (forum state has a significant interest in deciding the dispute because the injured party is a resident of the forum); *Gen. Retail Servs., Inc., supra* (plaintiff's interest in obtaining convenient and effective relief in forum state outweighed defendant's burden in defending the suit there). Accordingly, the court finds that it may exercise personal jurisdiction over Raser.

## II.    Failure to State a Claim upon Which Relief Can Be Granted

a)    <u>Standard of Review</u>

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for

relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010). A court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8

14

and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).  The complaint need not even "correctly specify the legal theory" giving rise to the claim for relief. *Gilbert, supra*.[7]  Even if a plaintiff fails to oppose a 12(b)(6) motion, the court still is obliged to assess the legal sufficiency of the complaint.  *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (citations omitted).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).  Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

    b)    <u>Discussion</u>

Defendants urged dismissal of plaintiffs' claims on various grounds, separately targeted

---

[7] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

against, and divided by, the source of each claim – *ex contractu* versus *ex delicto*.[8]    The court

will do the same, subject to one modification.[9]

1)    <u>Breach of Contract and Detrimental Reliance</u>

Defendants originally urged dismissal of plaintiffs' breach of written contract claim for

lack of privity because, in their original complaint, plaintiffs named or described themselves as

limited liability companies, whereas the governing agreement(s) showed that LIMU contracted

with similarly named corporations.  In response to court order, however, plaintiffs amended their

complaint to correct their corporate status.  *See* doc. #s 35 & 37.  Accordingly, insofar as the

court may discern, this argument is moot.

Defendants next argue that plaintiffs' claim for breach of oral contract should be

dismissed because under Louisiana law an oral contract for more than $500 must be proved by at

least one witness and other corroborating circumstances.  La. Civ. Code Art. 1846.  Although the

---

[8]  Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.  *Funches v. Progressive Tractor & Implement Co., L.L.C.*, ____ F.3d ____, 2018 WL 4659066, at *2 (5th Cir. Sept. 28, 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Here, both sides analyzed plaintiffs' claims pursuant to Louisiana law.  Therefore, they implicitly agree that the disputed issues are governed by the substantive law of Louisiana.  *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied).  Furthermore, according to the copy of LIMU's Policies & Procedures adduced by defendant, plaintiffs, as Louisiana residents, were entitled to bring an action against LIMU pursuant to Louisiana law.  *See* LIMU Policies & Procedures, § 13(c).

[9]  Defendants addressed plaintiffs' detrimental reliance claim as a tort claim.  The Fifth Circuit, however, has recognized that detrimental reliance sounds in contract.  *Stokes v. Georgia-Pac. Corp.*, 894 F.2d 764, 770 (5th Cir.1990).   Thus, the court will consider plaintiffs' detrimental reliance claim together with their breach of contract claims.

"one witness" requirement may be met by plaintiff's own testimony,[10] there is some authority for the proposition that the "corroborating circumstances" must come from a source other than the plaintiff. *See e.g., McGregor v. Hospice Care of Louisiana in Baton Rouge, Inc.*, No. 2008CA2029, 2009 WL 838621 (La. App. 1st Cir. March 27,2009) (unpubl.) (citation omitted). Defendants contend that plaintiff did not set forth any facts in their complaint to support requisite "corroborating circumstances."

However, the Fifth Circuit has held that, at least in the context of an oral employment agreement, corroborating circumstances may be satisfied by external manifestations of the agreement, such as plaintiff's leaving another secure position to accept the new job, which he apparently would not have done but for the existence of the protections contained in the alleged oral agreement. *See McGregor, supra*. In other words, corroborating circumstances may be satisfied by actions taken by plaintiff that otherwise would prove irrational or illogical, absent the alleged terms of an oral agreement.

Here, plaintiffs alleged that, because of the MLM Promise, they worked "day and night, virtually seven days a week," for many years. Plaintiffs further alleged that other distributors were enticed to join LIMU's sales force pursuant to the offer of the "MLM Promise." Therefore, it would have been irrational or illogical for plaintiffs and other distributors to put in so much time and effort, absent the MLM Promise. At this stage of these proceedings, plaintiffs have alleged sufficient facts to support their claim for breach of oral contract.

Closely related to plaintiffs' claim for breach of oral contract is their claim for detrimental reliance. Under Louisiana law,"[a] party may be obligated by a promise when he

---

[10] *Meredith v. Louisiana Fed'n of Teachers*, 209 F.3d 398, 403 (5th Cir.2000).

17

knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. Civ. Code Art. 1967 (in pertinent part). To prevail on a claim for detrimental reliance, plaintiffs must prove by a preponderance of the evidence: "(1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the promisee; and (4) a change in position to the promisee's detriment because of the reliance." *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 334 (5th Cir. 2007) (citation omitted). Detrimental reliance claims are not favored in Louisiana; therefore, they must be examined strictly and carefully. *Id.*

Defendants contend that plaintiffs' allegations are conclusory and do not suffice to state a claim for relief. Although plaintiffs' allegations are succinct and track the elements of their claim, there are sufficient underlying facts to support the claim. For example, LIMU represented to plaintiffs that they owned their distributorships, and that if they successfully built their downline organization, then they would be able to step aside and earn residual income from the business they had built. Certainly, if, as alleged, LIMU made this representation to its distributors, then it plausibly should have expected them to rely upon it. Indeed, plaintiffs allege that they relied on LIMU's representations by working for years to build their downline organization and by remaining with LIMU. The court reasonably may infer that had plaintiffs known that LIMU could pull the rug out from under them at any time, then they would not have been motivated to work as hard and long as they did.

Defendants further reason that if plaintiffs have a claim for breach of contract, then they cannot have a detrimental reliance claim. Rule 8(a)(3) however, authorizes plaintiffs to plead

18

alternative theories—even if those theories are inconsistent.  *Tokio Marine & Nichido Fire Ins. Co., Ltd. v. Precision Trucking*, No. 09-1980, 2010 WL 11618095, at *2 (N.D. Tex. June 8, 2010) (citing Fed.R.Civ.P. 8(a)(3)).

2)      Tort Law Claims

Defendants contend that plaintiffs do not allege their fraud and negligent misrepresentation claims with sufficient particularity.  Rule 9(b) requires that circumstances constituting fraud or mistake be alleged with particularity.  Fed.R.Civ.P. 9(b).  The particularity demanded by Rule 9(b) supplements Rule 8(a)'s pleading requirement.  *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).  Allegations of fraud under Louisiana law asserted in federal court implicate the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986); *Conerly Corp. v. Regions Bank*, 2008 WL 4975080 (E.D. La. Nov. 20, 2008).[11]  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed.R.Civ.P. 9(b).  What constitutes sufficient particularity for Rule 9(b) varies with the facts of each case. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).  At minimum, however, Rule 9(b) requires a plaintiff pleading fraud to "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-565 (5th Cir. 2002) (quoted sources and internal quotation marks omitted).

---

[11]  Furthermore, the Fifth Circuit applies Rule 9(b)'s heightened pleading requirements to negligent misrepresentation claims when, as here, the parties have not separately focused upon the negligent misrepresentation claims and they are based on the same alleged facts as the fraud claims.  *Benchmark Electronics, Inc., v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003).

Nonetheless, the "'time, place, contents, and identity' standard is not a straitjacket for Rule 9(b)." *Grubbs*, 565 F.3d at 190.

The court finds that plaintiffs have satisfied the foregoing pleading requirements. Under Louisiana law, the elements of a claim for delictual fraud or intentional misrepresentation include: "(a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury." *Guidry v. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999) (citations omitted). Similarly, to set forth a claim for negligent misrepresentation:

> (1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty, which can occur by omission as well as by affirmative misrepresentation; and (3) the breach must have caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation.

*Kadlec Medical Center v. Lakeview Anesthesia*, 527 F.3d 412, 418 (5th Cir. 2008) (citation omitted) (citation omitted); La. Civ. Code Arts. 2315-2316.

Here, plaintiffs alleged that LIMU, via its marketing materials and distributor agreement, and Raser himself, via statements conveyed at corporate events held in Louisiana almost annually, represented that plaintiffs owned their distributorships, and that if they built up a strong downline organization, they could sit back and enjoy the residual income for the rest of their lives. Plaintiffs detailed the when, where, and by whom some of these statements were made in their declarations adduced in response to the motion to dismiss. *See* Pardue and Liles Declarations.[12] Plaintiffs further maintain that subsequent events that precipitated this suit confirm that the representations were false, and that defendants had a motive to mislead them. In

---

[12] The court will not exalt form over substance by requiring plaintiffs to amend their complaint to incorporate the statements from their declarations.

addition, plaintiffs alleged that they relied on defendants' representations.[13]

Defendants further argue that plaintiffs' tort law claims are time-barred.  In diversity cases, federal courts apply state laws on limitations, including accrual, and tolling.  *Hensgens v. Deere & Co.*,  869 F.2d 879, 880 (5ᵗʰ Cir. 1989); *Milton v. Stryker Corp.*, 551 F. App'x 125, 127 (5th Cir. 2014) (applying Texas law on accrual in diversity case).  In Louisiana, the prescriptive period  is strictly construed against prescription and in favor of the obligation sought to be extinguished.  *Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).  Ordinarily, the burden of proof is on the party pleading prescription.  *Lima v. Schmidt*, 595 So. 2d 624, 628 (La. 1992). However, when it appears that the claims have prescribed on the face of the complaint, then the plaintiff has the burden of proof to establish facts which would have the effect of interrupting or avoiding prescription.  *Martens v. North*, 1998 WL 378137 (E.D. La. 1998); *Wimberly, supra*.

In Louisiana, fraud and negligent misrepresentation are delictual actions subject to a liberative prescription period of one year that runs from the day injury or damage is sustained. La. Civ. Code Art. 3492; *Patrick v. Dupont*, 171 So.3d 259 (La. App. 1ˢᵗ Cir. 2015); *Simmons v. Templeton*, 723 So.2d 1009, 1012 (La. App. 4ᵗʰ Cir. 1998).  Damages ordinarily are

---

[13]  In another section of their brief, defendants tangentially suggest that, in light of LIMU's Policies and Procedures, plaintiffs' reliance on any representations inconsistent therewith, was unreasonable or not justified.   However, whether a party reasonably relied on a representation is typically a question of fact.  *Donahuefavret Contractors, Inc. v. US Framing Int'l, LLC*, No. 17-12019, 2018 WL 3869497, at *4 (E.D. La. Aug. 15, 2018).  Furthermore, although the Fifth Circuit at times has found reliance on extra-contractual representations to be unreasonable as a matter of law where they are inconsistent with an unambiguous fully-integrated written contract, such an inquiry may prove to be fact-dependent, and, in any event, remains outside the limited scope of defendants' motion.  *See Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of Louisiana*, No. 11-806, 2014 WL 4930443, at *7 (E.D. La. Sept. 30, 2014) (court was unable to determine at motion to dismiss stage whether plaintiffs were reasonable in relying on defendants' representations).

sustained from the date injury is inflicted, so long as the injury is apparent to the victim, even though the extent of damages remains indeterminate. *Collinson v. Tarver Land Dev., LLC*, Civ. Action No. 11-1787, 2012 WL 688551, at *1 (W.D. La. Feb. 1, 2012), R&R adopted, 2012 WL 692193 (W.D. La. Mar. 2, 2012). Thus, "prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he is the victim of a tort." *Patrick, supra*.

Defendants contend that plaintiffs' cause of action accrued in 2003 when the alleged false or fraudulent statements first were made. However, plaintiffs did not allege that they knew the statements were false in 2003. Rather, they contend that the falsity of the statements was not confirmed until defendants pulled the rug out from under their distributorship in the latter part of 2017 and early 2018 – i.e., less than one year before suit was filed. In response, defendants reemphasize that plaintiffs should have known that the alleged statements were false because they conflicted with the terms of LIMU's Policies & Procedures. However, that argument again challenges the reasonableness of plaintiffs' beliefs-- a fact issue. *See* discussion, *supra*. Plaintiffs arguably could have believed that defendants intended to modify the written terms of their agreement or otherwise forebear enforcement of the inconsistent terms. In short, the court is not persuaded that plaintiffs' tort claims necessarily are prescribed on the face of the complaint.

Drawing upon judicial experience and common sense, the undersigned concludes that the complaint, as amended, states a plausible claim for relief, sufficient to afford defendants fair notice of the claims against them, and a reasonable expectation that discovery will reveal relevant evidence to support each of the elements of plaintiffs' claims. *See Twombly, supra*.

22

**Conclusion**

For the foregoing reasons,

IT IS RECOMMENDED that the compound motion to dismiss for lack of personal

jurisdiction, Fed.R.Civ.P. 12(b)(2), and for failure to state a claim upon which relief can be

granted, Fed.R.Civ.P. 12(b)(6), filed by defendants, The Limu Company, L.L.C. ("LIMU") and

Gary Raser [doc. # 25] be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties

have **fourteen (14) days** from service of this Report and Recommendation to file specific,

written objections with the Clerk of Court.  A party may respond to another party's objections

within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any

objection or response or request for extension of time shall be furnished to the District Judge at

the time of filing.  Timely objections will be considered by the District Judge before he makes a

final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 1st day of October 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE