UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **OCEAN SKY INTERNATIONAL, L. L. C., ET AL.** | **CASE NO. 3:18-CV-00528** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **THE LIMU COMPANY, L.L.C., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**MEMORANDUM ORDER**

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to compel discovery production, and associated request for sanctions [doc. # 185] filed by plaintiff/defendant-in-counterclaim, Ocean Sky International, Inc. ("Ocean Sky"). The motion is opposed. [doc. # 202]. For reasons assigned below, the motion is GRANTED-IN-PART and DENIED-IN-PART.[1]

**Background**

The parties and the court are well-acquainted with this case's history, and consequently, the court's recitation of background information will be limited to the circumstances pertaining to the parties' latest discovery impasse. The following summary largely tracks the chronology set forth in Ocean Sky's motion:

1. On February 21, 2019, Ocean Sky propounded its First Set of Requests for Production of Documents to defendant, The LIMU Company, LLC ("LIMU"), which sought, *inter alia*, the following pertinent documents:

    a) No 54: "Any and all DOCUMENTS evidencing and/or relating to downline sales on a quarterly or annual basis by and/or among your top ten PROMOTERS for the past five (5) years."

    b) No. 55: "A copy of Ocean Sky International, Inc.'s entire downline on a quarterly or annual basis as it existed from the time it enrolled with you to present date."

---
[1] As this motion is not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

  c) No. 56: "A copy of Suni Enterprises, Inc.'s entire downline genealogy on a quarterly or annual basis as it existed from the time it enrolled with you to present date."

  d) No. 59: "Any and all DOCUMENTS evidencing Ocean Sky International, Inc.'s personally enrolled downline as it existed on January 1, 2014 to present date."

  e) No. 60: "Any and all DOCUMENTS evidencing Suni Enterprises, Inc.'s personally enrolled downline as it existed on January 1, 2014 to present date."

  f) No. 64: "A copy of your entire genealogy reports evidencing rank for each active distributor for each month dating back for the past five (5) years." (M/Compel; Decl. of Chris Wellman, Exh. A).

2. On April 24, 2019, LIMU provided responses to the requests, and interposed objections on the grounds that the discovery sought information that was not proportional to Ocean Sky's claims or defenses. (Wellman Decl.). Following a meet and confer conference, however, LIMU agreed to produce the data, and did so on December 9, 2019. *Id*.

3. Upon receipt of the data, Ocean Sky forwarded the information to its damages expert, Derk Rasmussen, for verification that it was complete and accurate. (Wellman Decl.). However, Mr. Rasmussen discovered that the data were both incomplete and manipulated, allegedly constructed in a manner to make it appear as if Ocean Sky's damages were less than claimed. *Id*.

4. Ocean Sky related to LIMU what Mr. Rasmussen had found. (Wellman Decl.). In response, LIMU conceded that the information was incomplete, blaming it on a "technical glitch" within its system. *Id*. LIMU agreed to produce a secondary set of data, which it did on March 3, 2020. *Id*.

5. Upon receipt of the second set of data, Ocean Sky again forwarded the information to Mr. Rasmussen for review. (Wellman Decl.). However, Rasmussen confirmed that the information still was incomplete. *Id*. Ocean Sky communicated to LIMU the results of Mr. Rasmussen's latest findings. *Id*.

6. Counsel for Ocean Sky met and conferred with his opposite number(s) regarding the incomplete data. In an effort to resolve the issue, Ocean Sky offered LIMU two options: 1) that Ocean Sky's expert be permitted access to the native data in order to extract the information himself with the understanding that such access would be monitored by all parties and conducted via screen share; or 2) that Ocean Sky's expert be allowed to meet and confer with LIMU's IT person to resolve the issue of whether the data was incomplete. (Wellman Decl.).

> 7. Counsel for LIMU informed counsel for Ocean Sky that LIMU would not make its employee available for an informal discussion with plaintiff's expert, but would make the employee available for a deposition. (Decl. of George Snellings; Opp. Memo., Exh.). Defense counsel suggested that because plaintiff's counsel already was scheduled to be in Orlando for depositions on August 17 and 18, he could take the deposition of LIMU's IT professional at that time. *Id*. Furthermore, LIMU did not object to Mr. Rasmussen's participation in the deposition. *Id*.

Concerned about the cost associated with taking a formal deposition, Ocean Sky filed the instant motion to compel on July 23, 2020, and requested entry of the following order against LIMU:

> Ocean Sky's expert be permitted access to the native data in order to extract the information himself with the understanding that such access would be monitored by all parties and conducted via screen share; *or* that Ocean Sky's expert be allowed to meet and confer with LIMU's IT person to resolve the issue of whether the data was incomplete.

Ocean Sky also sought an award of reasonable attorney's fees related to the filing of the motion in the amount of $2,100.00, plus expert fees in the amount of $4,775.50.

On August 13, 2020, LIMU filed its opposition to the motion to compel, in which it argued that there was nothing within Rule 26 of the Federal Rules of Civil Procedure that required it to make its employees available to an adversary's expert for an informal discussion to address alleged discrepancies associated with the employer's document production. [doc. # 202]. LIMU also noted that it had suggested to counsel for Ocean Sky that it could take the deposition of LIMU's IT employee remotely or have a conversation between Mr. Rasmussen and LIMU's IT employee before a court reporter so the communication could be recorded.

As for Ocean Sky's alternative request for access to LIMU's native files, LIMU asserted that Ocean Sky had not met its burden to show that native file access was appropriate or

necessary because there was no evidence that LIMU failed to honor its discovery obligations. LIMU also urged the court not only to deny Ocean Sky's request for fees, but instead to award LIMU reasonable attorneys' fees of its own in the amount of $1,783.00 for Ms. Maureen Soles' time and $1,050.00 for Mr. George Snellings' time.

Ocean Sky filed its reply brief on August 14, 2020. [doc. # 203]. It asserted that the data produced by LIMU remained incomplete and not in compliance with Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure. Ocean Sky emphasized that while its expert had explained why the data produced by LIMU remained incomplete, LIMU failed to adduce any evidence to refute those findings. Consequently, Ocean Sky asked the court to enter an order requiring LIMU to grant it access to the native data so Ocean Sky could extract the information itself. The matter is ripe.

## Analysis

I.  **Requests for Production**

   a)   Law

Rule 34 of the Federal Rules of Civil Procedure provides that "a party may serve on any other party a request within the scope of Rule 26(b) . . . to produce . . . any designated documents or electronically stored information -including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or any designated tangible things" that are within the "party's possession, custody, or control . . ." Fed.R.Civ.P. 34(a)(1)(A) & (B).[4]  A

---

[4] Under Rule 26(b),
> [u]nless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant

written response to a request for production, not served under Rule 26(d)(2), is due within 30 days after service, unless the court orders, or the parties stipulate to a different period. Fed.R.Civ.P. 26(b)(2)(A).

Rule 34's definition of "possession, custody, or control," includes more than actual possession or control of the materials; it also contemplates a party's "legal right or practical ability to obtain the materials from a nonparty to the action." *White v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 3423388 (M.D. La. Aug. 4, 2011 (citations omitted). A party must "make a reasonable search of all sources reasonably likely to contain responsive documents." *Id*. A party also is "charged with knowledge of what its agents know or what is in records available to it." *Autery v. SmithKline Beecham Corp.*, 2010 WL 1489968 (W.D. La. Aug. 4, 2011) (citation omitted).

A party objecting to discovery "must state with specificity the objection and how it relates to the particular request being opposed . . ." *Reyes v. Red Gold, Inc.* 2006 WL 2729412 (S.D. Tex. Sept. 25, 2006) (citations omitted). In other words, to escape the production requirement, a responding party must interpose a valid objection to each contested discovery request. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.

---

to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The courts understand the rule to provide for broad and liberal discovery. *See Schlagenhauf v. Holder*, 379 U.S. 104, 114-5 (1964); *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385 (1947). Nonetheless, the scope of discovery is limited by relevance, albeit "relevance" is to be broadly construed. *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982).

1990) (citation omitted). Conclusory objections that the requested discovery is "overly broad," "burdensome," "oppressive," and "irrelevant," do not suffice. *Id*. Furthermore, in the absence of good cause, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, then any objections thereto are waived. *In re: United States of America*, 864 F.2d 1153, 1156 (5th Cir.1989); *see also* Fed.R.Civ.P. 33(b)4).

Finally, it is manifest that a party seeking discovery may move for an order compelling an answer, production, or inspection if a party, *inter alia*, fails to answer an interrogatory or fails to produce requested documents. Fed.R.Civ.P. 37(a)(3)(B)(iii-iv). An evasive or incomplete answer or response is treated as a failure to answer or respond. Fed.R.Civ.P. 37(a)(4).

b) <u>Discussion</u>

Ocean Sky invoked Rule 26(b)(2)(C)(i) to support its unconventional proposal to have its expert pose questions to LIMU's IT professional to resolve certain ambiguities in LIMU's data production. However, Rule 26(b)(2)(C) authorizes an order limiting the frequency or extent of discovery *otherwise* allowed. There is nothing in the rule to suggest that it may be used as a vehicle to create novel discovery techniques. Thus, if Ocean Sky wishes to question LIMU's employee it will have to do so via deposition, which, of course, may be done remotely via Zoom or other video conference.

However, as Ocean Sky noted, LIMU failed to rebut the discrepancies in the data that Ocean Sky's expert identified in his declaration. As such, and given LIMU's past intransigence in discovery matters, the court is not persuaded that permitting Ocean Sky to take the deposition of LIMU's IT professional will resolve Mr. Rasmussen's concerns. Instead, it is highly likely that, after taking the deposition, Ocean Sky would be forced to return to the court to obtain an

order requiring LIMU to make the data available in its native format.[2] Accordingly, the court will grant Ocean Sky's alternative request for relief.

## II. Fees, Costs, Expenses, and/or Sanctions

Considering the mixed relief obtained by movant, the court declines to award fees, expenses and/or costs in favor of either side. Rather, each party shall bear its own costs. *See* Fed.R.Civ.P. 37(a)(5)(C).

## Conclusion

For the above-assigned reasons,

IT IS ORDERED that plaintiff/defendant-in-counterclaim, Ocean Sky International, Inc.'s motion to compel discovery production [doc. # 185] is GRANTED-IN-PART, and that within the next fourteen (14) days from the date of this order (or within such other period as jointly agreed to by the parties), defendant/counter-claimant, The LIMU Company, L.L.C., shall permit Ocean Sky's expert to access the native data sought in the discovery requests so that he may extract the requested information himself, with the understanding that such access will be monitored by all parties and conducted via screen share.

IT IS FURTHER ORDERED that the motion [doc. # 185], including the cross-requests for sanctions and/or fees, is DENIED.

In Chambers, at Monroe, Louisiana, this 21st day of August 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[2] In its brief, LIMU argued that to obtain native file access, a party first must show that the responding party failed to fulfill its discovery obligations. (Opp. Memo., pg. 6). However, Ocean Sky made that uncontroverted showing here. *See* Decl. of Derk Rasmussen; M/Compel, Exh.

7